UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| AUDREY M. HODGE,<br>　　　　　Appellant,<br><br>　　　v.<br><br>DEPARTMENT OF VETERANS<br>　　　AFFAIRS,<br>　　　　　Agency. | DOCKET NUMBER<br>AT-1221-19-0040-W-1<br><br><br>DATE: February 19, 2025 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Sterling Deramus, Esquire, Birmingham, Alabama, for the appellant.

Kimberly Kaye Ward, Esquire, Decatur, Georgia, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Henry J. Kerner, Vice Chairman*
Raymond A. Limon, Member

**Vice Chairman Kerner recused himself and
did not participate in the adjudication of this appeal.

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which denied her request for corrective action under the Whistleblower Protection Act.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

For the reasons discussed below, we GRANT the appellant's petition for review. We REVERSE the initial decision and GRANT the appellant's request for corrective action as to the detail assignment. We AFFIRM as MODIFIED the initial decision's denial of corrective action as to the remaining personnel actions.

## BACKGROUND

The appellant is an Associate Physician for the agency's Central Alabama Veterans Administration Healthcare System. Initial Appeal File (IAF), Tab 1 at 1. During the relevant time period, the appellant's duties included acting as the Medical Director for the Montgomery Alabama Community Living Center, which is a long-term care facility for geriatric patients. IAF, Tab 24-1, Hearing Audio (HA), Track 1 at 2:00 (testimony of the appellant). In her position, she supervised nurse practitioners. *Id*. at 19:40 (testimony of the appellant). Under Alabama licensing regulations, a licensed physician must oversee a nurse practitioner (NP) under a collaborative relationship. IAF, Tab 22 at 9; HA, Track 1 at 7:35 (testimony of the appellant). The collaborating physician is ultimately responsible for the patient care provided by the NP. HA, Track 1 at 14:30 (testimony of the appellant). In 2016 and early 2017, the appellant expressed concerns to her supervisors about the performance of NP M,[2] one of the NPs under her supervision. IAF, Tab 22 at 9; HA, Track 1 at 28:40 (testimony of the appellant). On February 15, 2017, NP M formally requested a reassignment; in doing so, NP M accused the appellant of disparate treatment and harassment. IAF, Tab 22 at 17. After consulting with the state medical board, the appellant emailed her supervisors on February 17, 2017, requesting the immediate reassignment of NP M and notifying the agency that she was terminating her collaborative relationship with NP M as of March 3, 2017. IAF, Tab 22 at 19-22. The agency did not immediately grant that request. *Id*. at 19.

---

[2] We will refer to this NP as "NP M," as the administrative judge did in the initial decision.

In a February 24, 2017 meeting, agency managers directed the appellant to rescind her termination of the collaborative relationship with NP M and warned her that her failure to comply with that instruction could result in a reprimand. HA, Track 2 at 5:20 (testimony of the appellant). On March 2, 2017, the appellant reiterated her concerns about NP M to agency management and informed the agency that she was going forward with terminating her collaborative relationship with NP M. IAF, Tab 22 at 26. The appellant's supervisor responded by informing her that the agency had detailed NP M to a position under another supervisor, but that the appellant was to remain NP M's permanent supervisor and collaborating physician. *Id*. at 22. However, the appellant terminated the collaborative relationship the following day. HA, Track 2 at 12:45 (testimony of the appellant). The appellant's third-level supervisor told the appellant's immediate supervisor to issue the appellant a formal written reprimand for her failure to follow instructions, but he instead reprimanded the appellant orally. HA, Track 5 at 33:25 (testimony of the appellant's immediate supervisor).

In May 2017, the Secretary of Veterans Affairs received an anonymous complaint regarding alleged misconduct by the appellant and certain other Community Living Center staff. IAF, Tab 22 at 34-35. Among other things, the anonymous complaint alleged that the appellant had created a hostile working environment and that she was working a second job while on agency duty. *Id*. In July 2017, the agency detailed the appellant to a position in another facility pending the outcome of an investigation. *Id*. at 60. The agency instructed the appellant not to contact employees at her permanent workstation during her detail. *Id*. The appellant expressed concerns to management about the no-contact instruction during the detail. *Id*. at 62. After the agency's Inspector General investigated the allegations against the appellant and found no wrongdoing, the agency returned the appellant to her permanent position on September 28, 2017. IAF, Tab 21 at 18-19.

After returning from her detail, the appellant reported a number of patient issues that had not been addressed during her absence. HA, Track 3 at 18:10 (testimony of the appellant). Shortly after returning from her detail, the agency required the appellant to take on additional duties on the departure of another physician. *Id*. The appellant raised staffing concerns in the months following her return from detail. IAF, Tab 22 at 80-81, 83-88.

The appellant filed a complaint with the Office of Special Counsel (OSC) in June 2018, alleging reprisal for protected disclosures and activities. IAF, Tab 5 at 30-51. In August 2018, OSC informed the appellant that it had closed its investigation into her complaint and that she had the right to file an IRA appeal. IAF, Tab 1 at 15.

The appellant timely filed this IRA appeal in October 2018. IAF, Tab 1. The appellant alleged that she made protected disclosures regarding the performance of NP M and the no-contact instruction during her detail; she also alleged that she engaged in protected activity by refusing to obey the instruction not to terminate her collaborative relationship with NP M. IAF, Tab 23 at 3. The appellant alleged that the agency retaliated against her by threatening discipline, reprimanding her, detailing her, and increasing her duties after her return from detail. *Id*.

The administrative judge determined that the Board has jurisdiction over this IRA appeal. IAF, Tab 11. After holding a hearing, he issued an initial decision denying the appellant's request for corrective action. IAF, Tab 28, Initial Decision (ID). He found that the appellant made protected disclosures regarding the performance of NP M and the patient care issues that were unaddressed during her detail. ID at 10-11, 14. However, he determined that the appellant failed to prove that she engaged in protected activity regarding the instruction not to terminate the collaborative agreement. ID at 11-13. The administrative judge found that the appellant's detail and subsequent change in duties qualified as personnel actions, but that neither the threatened written

reprimand nor the oral reprimand qualified. ID at 14-16. The administrative judge concluded that the appellant's disclosures regarding NP M were a contributing factor in her detail and change in duties, but that her reports of patient care deficiencies following her return from detail did not contribute to these actions. ID at 16-17. Finally, he found that the agency proved by clear and convincing evidence that it would have taken those actions in the absence of the appellant's disclosures. ID at 17-20.

The appellant has filed a timely petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. The agency has responded in opposition to the petition for review. PFR File, Tab 3.

## ANALYSIS

<u>The appellant failed to establish that she engaged in protected activity under 5 U.S.C. § 2302(b)(9)(D).</u>

The administrative judge found that the appellant made protected disclosures of a substantial and specific danger to public health and safety. ID at 10-11, 14. The agency does not challenge that finding on review, and we see no reason to disturb it. However, for the reasons set forth below, we modify the administrative judge's finding that the appellant failed to prove that she engaged in protected activity under 5 U.S.C. § 2302(b)(9)(D).

The appellant refused to rescind the termination of her collaborative relationship with NP M in February and March 2017. IAF, Tab 22 at 26. At that time, it was a prohibited personnel practice to take an action against an employee for "refusing to obey an order that would require the individual to violate a law." 5 U.S.C. § 2302(b)(9)(D) (2012). The U.S. Court of Appeals for the Federal Circuit has held that the version of section 2302(b)(9)(D) in effect at that time extended only to orders that would require the individual to take an action barred by statute. *Rainey v. Merit Systems Protection Board*, 824 F.3d 1359, 1361-62, 1364-65 (Fed. Cir. 2016). Here, the appellant alleges that the instruction to

rescind the termination was inconsistent with provisions of the Alabama Administrative Code, which are state regulations. PFR File, Tab 1 at 11-12. Thus, under the law in effect at the time the relevant events took place, the appellant's claim that she disobeyed an order that would have required her to violate the Alabama Administrative Code fell outside the scope of 5 U.S.C. § 2302(b)(9)(D).

On June 14, 2017, the President signed into law the Follow the Rules Act (FTRA), which amended section 2302(b)(9)(D) by inserting after "law" the words "rule, or regulation." Follow the Rules Act, Pub L. No. 115-40, 131 Stat. 861 (2017). Thus, under the FTRA, the appellant's claim that she disobeyed an order that would require her to violate a state regulation falls within the scope of section 2302(b)(9)(D). However, the Board held in *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 19, that the FTRA does not apply to events that occurred before its enactment. Therefore, any claim that the agency retaliated against the appellant prior to June 14, 2017, for refusing to violate a state regulation was not a prohibited personnel practice under 5 U.S.C. § 2302(b)(9)(D).

Nonetheless, the Board has found that the expansion of whistleblower protections to new activities should be applied when the personnel action at issue took place after the expansion went into effect. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 50-51. Accordingly, the Board would have authority to review in this IRA appeal the appellant's claim that the agency detailed her or assigned her additional duties in retaliation for her refusal to violate the Alabama Administrative Code. Nevertheless, we agree with the administrative judge that the appellant failed to establish that the agency's instruction not to terminate the collaborative relationship with NP M immediately would have required her to violate the Code. ID at 11-13.

On petition for review, the appellant cites a general provision of the Code prohibiting unprofessional conduct. PFR File, Tab 1 at 11-12. She also appears

to reassert her claim that the instruction not to end her collaborative relationship with NP M required her to violate section 610.X.5-.09, which requires a collaborating physician to be available to communicate and consult with the NP. *Id*. at 9-11. We recognize that the appellant may have believed she was acting in accordance with state regulations when she terminated the collaborative relationship. However, she has not shown that continuing the collaborative relationship with NP M, even temporarily, would have violated any specific provision of those regulations. The Code provides that "collaboration does not require direct, on-site supervision of the activities of a [NP]." Ala. Admin. Code § 610.X.5-.01(5). It also provides for a covering physician to serve when the collaborating physician is unavailable for up to 60 days. *Id*. § 610.X.5.09(2)-(3). Thus, the appellant could have complied with the agency's instruction not to immediately terminate her collaborative relationship with NP M without violating the Code. We therefore find that the appellant failed to prove that she engaged in protected activity under 5 U.S.C. § 2302(b)(9)(D).[3]

## The appellant established a prima facie case of whistleblower reprisal as to the February 2017 threatened reprimand.

*The agency's threat to reprimand the appellant is a covered personnel action.*

We decline to disturb the administrative judge's findings that the appellant's detail and subsequent change in duties both constituted personnel actions but her oral reprimand did not. ID at 14-15. The parties do not dispute these findings on review. However, we disagree with the administrative judge's finding regarding the threatened reprimand.

---

[3] The appellant also argues on petition for review that the agency's order removing her from her duties pending the Inspector General investigation gives rise to a retaliation claim under 5 U.S.C. § 2302(b)(9)(D). PFR File, Tab 1 at 12. However, we agree with the administrative judge that the appellant did not refuse to comply with that order, and therefore section 2302(b)(9)(D) is not implicated. ID at 13.

A written reprimand is a personnel action for purposes of an IRA appeal, but an oral counseling is not. *Johnson v. Department of Health and Human Services*, 87 M.S.P.R. 204, ¶ 11 (2000). The administrative judge found that the appellant failed to specify whether the agency threatened her with a written or oral reprimand and, therefore, she failed to prove that she was threatened with a covered personnel action. ID at 15-16. However, in light of the fairly broad interpretation that is to be given to allegations of threatened personnel actions, *see Gergick v. General Services Administration*, 43 M.S.P.R. 651, 656 (1990), we find that the threat to the appellant in this case constitutes a threat to take a personnel action. According to the appellant, on February 24, 2017, her first-level supervisor advised her that she would receive a "reprimand" if she did not rescind her termination of her collaborative relationship with NP M. IAF, Tab 5 at 24. Because the nature of the threatened reprimand was not specified in this case, we find that the agency's threat encompassed a written reprimand. Thus, we find that the agency threatened a covered personnel action in the form of a written reprimand.

> *The appellant's protected disclosures were a contributing factor in the threatened reprimand.*

Having found that the threatened reprimand was not a covered personnel action, the administrative judge did not address whether the appellant's protected disclosures were a contributing factor in that threatened action. We modify the initial decision to find that the appellant established that her 2016 and 2017 disclosures regarding NP M and patient safety issues were a contributing factor in the threatened reprimand.

To prove that a disclosure was a contributing factor in a personnel action, the appellant only need demonstrate that the fact of, or the content of, the protected disclosure was one of the factors that tended to affect the personnel action in any way. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 18 (2015). The knowledge/timing test allows an employee to demonstrate that the

disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id*. Once this test has been met, an appellant has shown that her whistleblowing was a contributing factor in the personnel action at issue, even if, after a complete analysis of all of the evidence, a reasonable factfinder could not conclude that the appellant's whistleblowing was a contributing factor in the personnel action. *Id*.

The management official who threatened to reprimand the appellant acknowledged that he was aware of the appellant's 2016 and 2017 disclosures regarding NP M. HA, Track 5 at 24:10 (testimony of the appellant's immediate supervisor). We therefore find that the knowledge prong of the knowledge/timing test is satisfied. As to the timing prong, a personnel action taken within approximately 1 to 2 years of an appellant's disclosure satisfies that prong. *Mastrullo*, 123 M.S.P.R. 110, ¶ 21. Thus, we find that the appellant has proven that her 2016 and 2017 disclosures regarding NP M were a contributing factor in the February 2017 threatened reprimand. We must therefore determine whether the agency proved by clear and convincing evidence that it would have threatened the appellant with a reprimand in the absence of her protected disclosures. Because the record is fully developed, we will address that issue rather than remand the appeal. *See, e.g.*, *Forte v. Department of the Navy*, 123 M.S.P.R. 124, ¶ 27 (2016) (finding that the Board may decide an issue on review, rather than remanding, when the administrative judge applied an incorrect standard but the record was fully developed).[4]

---

[4] To the extent the appellant challenges the administrative judge's finding that the September 2017 disclosures were not a contributing factor in any of the challenged personnel actions, we see no reason to disturb that finding. By the time the appellant made her disclosures in September 2017, both the threat to reprimand her and the detail had already occurred, and therefore, her September 2017 disclosures could not have

The agency has proven its affirmative defense in part.

If an appellant makes out a prima facie case of retaliation for whistleblowing disclosures, the agency has an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosures. 5 U.S.C. § 1221(e)(1)-(2); *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 6 (2015). In determining whether an agency has met this burden, the Board will consider all of the relevant factors, including the following: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). The Board considers all the evidence, including evidence that detracts from the conclusion that the agency met its burden. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012); *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11. As explained in the initial decision and in this Final Order, the appellant proved her prima facie case with respect to three personnel actions: (1) the threatened

---

contributed to those actions. Although the assignment of additional duties occurred in September 2017, the administrative judge determined that the agency made the decision to assign those duties to the appellant prior to her September 2017 disclosures. ID at 17. We see no reason to disturb that finding, and therefore, we agree that the appellant failed to establish that her September 2017 disclosures were a contributing factor in any of the challenged personnel actions. *See Sherman v. Department of Homeland Security*, 122 M.S.P.R. 644, ¶ 9 (2015) (explaining that a disclosure cannot be a contributing factor in a personnel action if the decision to take that the action was made prior to the disclosure, even if the action was implemented after the disclosure).

reprimand; (2) the detail assignment; and (3) the change in duties and responsibilities after her return from the detail. *Supra* pp. 7-9; ID at 15-16.

*Threatened Reprimand*

Although he found that the threatened reprimand was not a covered personnel action, the administrative judge found in the alternative that the agency had proven by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected disclosures. He found that the agency's evidence was strong because it was reasonably concerned that, if the appellant terminated her collaborative relationship with NP M, it might appear that the appellant was retaliating against NP M for filing a harassment complaint against her. ID at 14 n.11. He further found that the appellant's third-level supervisor had no motive to retaliate for the appellant's disclosures. *Id*. We agree with the administrative judge's conclusion, but we modify his analysis.

Regarding the strength of the agency's evidence, we find that, not only did the agency have legitimate managerial concerns about the appellant terminating her collaborative relationship with NP M, but also the material facts surrounding the matter are undisputed. ID at 4-5. Regarding retaliatory motive, we find that motive of the appellant's third-level supervisor who ordered the reprimand and the appellant's immediate supervisor who actually threatened the reprimand are both relevant to the analysis. We cannot agree, however, that neither of these officials had any motive to retaliate. ID at 14 n.11, 19-20. In *Whitmore*, 680 F.3d at 1370-72, the U.S. Court of Appeals for the Federal Circuit cautioned the Board against taking "an unduly dismissive and restrictive view" of retaliatory motive. The court stated that, "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees." *Id*. at 1370. Applying this broader view of retaliatory motive, the court has found that an official may have a retaliatory motive even if

he or she is not "directly involved in the work at issue in an employee's disclosure." *Miller v. Department of Justice*, 842 F.3d 1252, 1261-62 (Fed. Cir. 2016). Here, the appellant's disclosures involved the performance of NP M, an employee under her supervision. The appellant's supervisors were also in NP M's supervisory chain, and therefore, disclosures about NP M's performance could reflect on them as managers. For these reasons, we find that there was some motive to retaliate against the appellant for her protected disclosures regarding the performance of NP M, but that such motive was not particularly strong because it did not involve any allegation of wrongdoing by any of the management officials involved in the challenged personnel actions.

As for the agency's treatment of similarly situated non-whistleblowers, we agree with the administrative judge that the agency did not put on any evidence in this regard. ID at 19-20. However, we do not agree that this factor therefore weighs against the agency as far as this personnel action is concerned. Rather, we find it inherently unlikely that any similarly situated non-whistleblowers exist, i.e., non-whistleblower physicians who terminated their collaborative relationships in contravention of higher management. Therefore, we find that this factor does not weigh significantly in the analysis. *See McIntosh v. Department of Defense*, 53 F.4th 630, 646 (Fed. Cir. 2022).

Considering these factors as a whole, we agree with the administrative judge's ultimate conclusion that the agency proved by clear and convincing evidence that the appellant's immediate supervisor would have warned her of the possibility of a reprimand notwithstanding her protected disclosures. Because the appellant notified her managers in advance that she was going to ignore their instruction, the appellant's immediate supervisor would have been remiss not to warn her of the potential consequences.

*Detail Assignment*

Regarding the detail assignment, we find that the agency presented some evidence in support of its decision, but the evidence overall was weak. It is

undisputed that an anonymous complainant raised several allegations of misconduct against the appellant and certain other staff at the Community Living Center. IAF, Tab 22 at 34-35. Specifically, the complainant accused the appellant of working for outside entities on official Government time, mismanaging her areas of responsibility, and bullying her staff. *Id*. at 34. It is also undisputed that the agency's Inspector General launched an investigation into the matter, and that the appellant was detailed to another facility for 2 months, pending the outcome of that investigation. IAF, Tab 21 at 17, 19. However, the reasoning behind the agency's decision to detail the appellant is less than clear.

Three witnesses provided testimony relevant to this issue—an Employee and Labor Relations (ELR) Specialist, the Chief of Human Resources, and the appellant's immediate supervisor. The ELR Specialist testified that, when the agency receives allegations of harassment or a hostile work environment, it will typically separate the complainant and the management official pending the outcome of its investigation. HA, Track 3 at 58:50 (testimony of the ELR Specialist). In that case, either the complainant or the manager will be detailed, at the complainant's option. HA, Track 3 at 59:30, Track 4 at 00:30 (testimony of the ELR Specialist). However, when asked whether the appellant should have been detailed in this particular case, he testified that, if it were up to him, he would not have detailed the appellant because the complaint was anonymous: "[T]ypically, on an anonymous complaint, we don't just start arbitrarily moving people around because again, it's anonymous, and we're not 100% sure where the complaint came from." HA, Track 4 at 01:40 (testimony of the ELR Specialist).

The Chief of Human Resources testified that it was "normal" for the agency to detail employees during investigations into their conduct, and that the decision to do so would depend on the nature and seriousness of the allegations, regardless of whether the complaint was anonymous. HA, Track 6 at 18:05, 23:25 (testimony of the Chief of Human Resources). However, he also testified

that not every allegation of a hostile work environment will result in an employee being detailed. *Id*. at 24:20 (testimony of the Chief of Human Resources).

The appellant's immediate supervisor likewise testified that employees are "sometimes" detailed out of a work unit during a hostile work environment investigation, particularly if there is evidence to support the allegation. HA, Track 5 at 37:00 (testimony of the immediate supervisor). He also testified that the more serious allegations of "patient abuse and fraud" in this case further supported the detail. *Id*. at 37:25 (testimony of the immediate supervisor). He admitted, however, that he was not ultimately the one who decided to detail the appellant. Rather, the decision was made by the appellant's third-level supervisor. HA, Track 6 at 03:55 (testimony of the immediate supervisor).

We must at this point correct the record on one important point: the appellant was not accused of abusing patients, failing to take action on patient abuse, or anything of the kind. Those allegations were leveled at another individual who the complainant stated was "verbally abusing her veterans by talking loud and extremely rude to them." IAF, Tab 22 at 34-35. Based on the appellant's response to the complaint, this was her understanding as well. *Id*. at 91-92. Likewise, the agency's statement of facts in its prehearing submission characterizes the complaint as raising allegations against the appellant of "mismanagement, hostile work environment, and moonlighting while on duty" but not of patient abuse. IAF, Tab 21 at 4. We therefore cannot agree with the initial decision's characterization of the complaint in this regard. ID at 6-7, 17. Furthermore, to the extent that the appellant's immediate supervisor cited allegations of patient abuse as supporting the detail assignment, his explanation lacks credibility. HA, Track 5 at 37:25 (testimony of the immediate supervisor); ID at 18.

In any event, although these three witnesses disagreed somewhat about the factors that go into deciding whether to detail an employee under investigation, they all agreed on one thing—that the decision on whether to detail the appellant

under the facts of this case was a matter of discretion. Yet the official who exercised that discretion, the appellant's third-level supervisor, was not called to testify. Nor is there any other explanation from her in the record as to why she exercised her discretion the way she did. We find that the agency's failure to proffer any evidence on this key issue seriously undermines its case. As for retaliatory motive, for the reasons explained above, we find that, although the appellant's third-level supervisor may have had some institutional retaliatory motive, any such motive was not particularly strong. *Supra* pp. 11-12.

Regarding the third *Carr* factor, we find that the agency's failure to present any evidence on its treatment of similarly situated non-whistleblowers also undermines its case. According to two agency witnesses, the agency routinely details employees who are the subject of investigations, particularly investigations that involve allegations of harassment or a hostile work environment. HA, Track 5 at 37:00 (testimony of the immediate supervisor), Track 6 at 18:05 (testimony of the Chief of Human Resources). Yet the agency failed to provide even a single example to support its case. Under these circumstances, we find that the agency's failure to provide any evidence tends to cut against it. *See Miller*, 842 F.3d 1252 at 1262.

Mindful that the agency bears the burden of proof on this issue, and a heightened burden at that, we find that the agency has not shown by clear and convincing evidence that it would have detailed the appellant to another facility absent her protected whistleblowing. Although the retaliatory motive was weak, we find that the agency's failure to provide any evidence on either the decision-maker's rationale or its treatment of similarly situated non-whistleblowers so seriously undermines its case that it has failed to prove its affirmative defense with respect to the detail assignment.

*Significant Change in Duties and Responsibilities*

Regarding the third personnel action—the significant change in the appellant's duties and responsibilities on her return from the detail—we find that

the agency has presented a much stronger and more complete case. As for the strength of the agency's evidence, it is undisputed that, while the appellant was on detail, another physician in her service line left for another facility, and on the appellant's return, the agency assigned the appellant to cover the supervisory and administrative duties formerly assigned to that other physician. HA, Track 3 at 20:25 (testimony of the appellant). It is also undisputed that physicians—especially chiefs and supervisors—are frequently called on to fill multiple roles when there is a staffing shortage in their work unit. HA, Track 5 at 39:40 (testimony of the immediate supervisor), Track 6 at 19:20 (testimony of the Chief of Human Resources). As the departing physician's supervisor, the appellant would have been the default choice to inherit these duties. In addition, as explained above, any retaliatory motive that may have been present was not particularly strong. *Supra* pp. 11-12.

Regarding the third *Carr* factor, we again observe that, despite this practice being allegedly common, the agency failed to present a single case in which it treated a non-whistleblower similarly to the appellant. Under these circumstances, we find that failure to provide any evidence on this point cuts slightly against the Government. *Supra* p. 15. Nevertheless, considering the record as a whole, we agree with the administrative judge that the agency has proven by clear and convincing evidence that it would have assigned these duties to the appellant even absent her protected disclosures.

## ORDER

We ORDER the agency to retroactively cancel the appellant's detail assignment from July 28, 2017, to September 28, 2017, and return her to status quo ante. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision, if there is any.[5] We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.[6] The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and

---

[5] The agency has repeatedly indicated that the appellant's detail assignment did not result in any loss in pay or benefits. IAF, Tab 21 at 5, Tab 22 at 60. The appellant does not appear to have ever argued otherwise. Instead, the appellant described the detail assignment as detrimental to her existing patients, a risk to her medical license, and requiring a longer commute. IAF, Tab 22 at 8, Tab 27 at 9-10. Thus, we do not yet have any indication that cancellation of the detail assignment requires anything beyond correction or rescission of associated records.

[6] If the agency believes that there is no status quo ante relief available for this personnel action, it should so inform the appellant.

Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable expert witness fees, and costs, 5 U.S.C. § 1214(g)(2), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE PARTIES

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[7]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[8]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐   1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐   2) Settlement agreement, administrative determination, arbitrator award, or order.

☐   3) Signed and completed "Employee Statement Relative to Back Pay".

☐   4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐   5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐   6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐   7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.
2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.